IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

MICHAEL A. KRAUSE,                    }
TDCJ-CID NO.1459103,                  }
             Plaintiff,               }
v.                                    }                    CIVIL ACTION G-05-213
                                      }
SHERIFF GEAN LEONARD, *et al.*,       }
             Defendants.              }

OPINION ON DISMISSAL

While a pre-trial detainee in the Galveston County Jail, plaintiff Michael A. Krause filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights by the Galveston County Sheriff, a nurse-administrator employed by Correctional Medical Services at the Galveston County Jail, a Galveston County State District Court Judge, and the Galveston County District Attorney.  (Docket Entry No.6).  Defendants Nurse Cheryl Moffett ("Moffett") and Sheriff Gean Leonard ("Leonard") have each filed a motion for summary judgment.  (Docket Entries No.33, No.38).  Plaintiff has filed a response to each motion. (Docket Entries No.39, No.41).  Moffett has filed a reply to plaintiff's response (Docket Entry No.40), to which plaintiff has filed a response.  (Docket Entry No.42).  Defendants Judge Lonnie Cox ("Cox") and District Attorney Kurt Sistrunk ("Sistrunk") have not been served with process and therefore, have not answered.

For the reasons to follow, the Court will grant defendants' motions for summary judgment and dismiss plaintiff's claims against all defendants.

1

I. BACKGROUND

In the summer of 2003, plaintiff worked at a re-sale shop in Galveston County, Texas. *Krause v. State*, 243 S.W.3d 95, 99 (Tex. App.—Houston [1st Dist. 2007, pet. ref'd). In December, 2003, he traveled to Wisconsin with a Galveston County teenager, whom he had befriended and eventually home-schooled. *Id*. Wisconsin authorities contacted the teenager's mother in Texas and told her that they were investigating plaintiff for possession of child pornography and for the abuse of two boys. *Id.* The teenager returned home to Texas. *Id.* On December 8, 2003, the teenager and his mother entered plaintiff's recreational vehicle and removed some of the teenager's personal belongings. *Id.* Afterwards, they discovered that they had removed plaintiff's CDs and that such CDs contained images of nude young males engaged in sexual activities. *Id.* The teenager, his mother, and a friend entered plaintiff's recreational vehicle a second time to retrieve the rest of the teenager's belongings; they also removed plaintiff's computers, safe, and briefcase. *Id.* They turned the items belonging to plaintiff over to the FBI and Galveston County authorities. Law enforcement officers obtained a search warrant to view the contents of the safe, the CDs and hard drives. *Id*. at 100. The CDs contained images of plaintiff naked and images of nude young males engaged in sexual activities. *Id.* The external hard drive contained the same or similar images and images of child pornography. *Id.*

On December 9, 2003, the State of Wisconsin issued a Violation Warrant, which stated that plaintiff had absconded from probation. (Docket Entry No.38-2, page 5). On the same day, plaintiff was arrested as a fugitive from justice in Galveston County; the next day he was booked into the Galveston County Jail. (Docket Entries No.1, No.38-2, pages 6-7). Plaintiff waived extradition on December 15, 2003. (Docket Entry No.38-2, page 8). Plaintiff claims on or about December 16, 2003, his residence was robbed. (Docket Entry No.16).

2

On January 6, 2004, a Texas Justice of the Peace issued a warrant for plaintiff's arrest for possession of child pornography.  (Docket Entry No.38-2, page 10).  On February 4, 2004, a commitment was issued to detain plaintiff on a charge of "indecency with a child sexual contact."  (*Id.*, page 12).  Plaintiff remained in the Galveston County Jail on a $50,000 bond. (*Id.*, pages 10-12).  In early 2005, plaintiff filed a petition for writ of mandamus in the Texas Court of Criminal Appeals, which was denied on November 23, 2005, without written order. Texas Court website.[1]  On April 11, 2005, plaintiff filed a petition for writ of habeas corpus in federal court complaining that he had been denied his rights to a speedy trial, due process, equal protection, and access to the courts.  The United States District Court for the Southern District of Texas, Galveston Division construed the pleading as a petition for writ of mandamus and dismissed it for failure to exhaust available state court remedies.  *Krause v. Cox*, Civil Action No.G-05-209 (S.D. Tex. Apr. 29, 2005).

In November 2005, plaintiff was convicted of possession of child pornography by a jury in the 56th State District Court of Galveston County, Texas in cause number 04CR0041. *Krause*, 243 S.W.3d at 99; TDCJ Offender Information website.[2]  The state district court set punishment at nine years confinement in prison and a $10,000 fine.  *Id.*  Plaintiff filed a notice of appeal in state court on November 16, 2005.  Texas Court website.[3]  On July 12, 2007, the First Court of Appeals for the State of Texas affirmed plaintiff's conviction for possession of child pornography and on October 31, 2007, the Texas Court of Criminal Appeals refused his petition for discretionary review.  *Id.*

---

[1] http://www.cca.courts.state.tx.us/opinions/printcase.asp?FilingID=234070

[2] http://168.51.178.33/webapp/TDCJ/InmateDetails.jsp?sidnumber=07231096

[3] http://www.1stcoa.courts.state.tx.us/opinions/case.asp?FilingID=88546

3

Thereafter, plaintiff entered a negotiated plea to a charge of indecency with a child in cause number 04CR0273, and on February 1, 2007, the state district court assessed punishment at two years confinement in TDCJ-CID. *Id.*; (Docket Entry No.16, page 1). Plaintiff reports that he is currently confined in a TDCJ-CID transfer facility. (Docket Entry No.43). Plaintiff's pleadings do not show, and public records on the world-wide web do not show, that plaintiff has sought habeas relief in state or federal court from his convictions.

On April 15, 2005, before his conviction, plaintiff filed a petition for writ of habeas corpus, which the Court re-designated as a civil rights complaint. (Docket Entries No.1, No.2). On May 18, 2005, plaintiff filed the pending amended complaint. (Docket Entry No.6). Plaintiff has also filed two responses to an Order to Answer Interrogatories. (Docket Entries No.16, No.17). Liberally construing his pleadings, the Court finds that plaintiff seeks compensatory and equitable relief from defendants on the following claims:

1. Judge Lonnie Cox of the 56th Judicial District Court of Galveston County and Galveston County District Attorney Kurt Sistrunk denied plaintiff his Sixth Amendment right to a speedy trial, due process, equal protection, access to the courts, and his liberty by delaying plaintiff's criminal trial. By plaintiff's calculation, he was detained in the Galveston County Jail for approximately 698 days or almost two years without reasonable bond before he was tried on the child pornography charge. During this time, plaintiff wrote several letters to the state district court about the delays. Plaintiff released his retained counsel for lack of money and relied on court-appointed counsel, who did not show up for proceedings in court. An unnamed attorney stole money from him. (Docket Entry No.6).

2. Galveston County Sheriff Gean Leonard, as plaintiff's caretaker during his detention in the Galveston County Jail, failed to protect him from attacks by other inmates. Moreover, the law enforcement officers under Leonard's supervision illegally arrested him and failed to give him statutory warnings; they also impounded his vehicle, which led to the loss of his prescription eyeglasses and orthopedic shoes. During his detention, his recreational vehicle, storage building, moving van, and cargo trailer were burgled, which resulted in a loss of $100,000 worth of goods. (Docket Entries No.6, No.16).

4

3. Nurse Cheryl Moffett of the Correctional Medical Services as Health Services Advisor at the Galveston County Jail denied plaintiff reasonable medical care for his numerous medical problems, which include head trauma and a broken tooth from inmate attacks, vertigo, acute inner ear disturbance, constant pain, headaches, blurred vision, loss of hearing from numerous ear infections. Plaintiff has been denied medical attention numerous times for these conditions; he has written grievances and letters to jail administrators, including Sheriff Leonard, which were either denied or unanswered.  When he was seen at the Jail's infirmary, his medical needs were met with deliberate indifference and with explanations that the cost of treatment was prohibitive or the needed treatment did not fall under written guidelines.  He has also been denied care for his vision and eyeglasses.  (Docket Entries No.6, No.16).

Defendant Moffett moves for summary judgment on grounds that plaintiff's claims are barred by the principle of *res judicata*, that she is entitled to qualified immunity, and that plaintiff has failed to allege a cause of action showing she violated his constitutional rights or that she was personally involved in the violation of his constitutional rights.  (Docket Entry No.33).  Defendant Gean Leonard moves for summary judgment on grounds that he is entitled to official and qualified immunity.  (Docket Entry No.38).

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground

supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  42 U.S.C. § 1983; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984).  Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States.  *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law."  *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

In conducting a qualified immunity analysis, the court must determine whether "plaintiff's allegations, if true, establish a constitutional violation" and whether the defendants'

actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 736, 739 (2002).  When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002).  Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry.  *Id.* at 323.

### A. Legality of Plaintiff's Arrest and Detention

Plaintiff alleges that he was illegally arrested without a warrant as a fugitive from justice while he was on a travel pass on a probated sentence from a Wisconsin criminal court and was not given any statutory warnings.  (Docket Entries No.6, No.16).  Plaintiff does not claim that he was illegally arrested on the possession of child pornography charge or the indecency with a child charge, for which he was later convicted.  Plaintiff does, however, allege that he was denied a speedy trial for almost two years while he was detained without reasonable bond in the Galveston County Jail.  (*Id.*).

Plaintiff claims that in November, 2003, he was told by Wisconsin officials that he was violating his probation by his presence in Texas.  (Docket Entry No.41).  He maintains that in early December, 2003, he returned to Wisconsin where he was arrested and held for three days until Wisconsin officials discovered that a Wisconsin court had issued a travel pass prior to his assignment to probation.  (*Id.*).  On December 8, 2003, plaintiff claims he was issued a ten day travel permit to Gilchrist, Texas to retrieve his property.  (*Id.*).  Texas officials arrested him on December 9, 2003, as a fugitive from justice.  (*Id.*).

Plaintiff also complains that he was detained without bail pending extradition for thirty days in the Galveston County Jail before he was charged with possession of child

pornography in Texas.  (*Id.*).  He claims because Texas officials detained him in excess of his ten-day travel pass, he violated the terms of his probation in Wisconsin and thus could not bond out of jail, even when a Texas court set bail.  (*Id.*).  Plaintiff refers to this situation as "more tainted fruit from a poisonous tree."  (*Id.*).

Defendant Leonard contends that plaintiff's arrest was legal and alternatively, that plaintiff's claims regarding his arrest and detention are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Docket Entry No.38).  Leonard's summary judgment proof includes a copy of a Violation Warrant issued on December 9, 2003, by the Department of Corrections for the State of Wisconsin, which shows that plaintiff was on probation on November 13, 2003, and that he absconded from probation on December 9, 2003.  (Docket Entry No.38-2, page 5).  Leonard's proof also includes a Complaint and Affidavit signed by Sgt. Don Kemp of Galveston County on December 10, 2003, which states that plaintiff was a fugitive from justice from the State of Wisconsin.  (*Id.*, page 6).  Another document reflects that plaintiff was given his statutory warnings by a magistrate judge on December 10, 2003, following his arrest as a fugitive from justice.  (*Id.*, pages 7, 28).  No bond was set on the fugitive charge.  (*Id.*, page 15).  On January 6, 2004, a commitment to jail was issued commanding the Sheriff to commit plaintiff to jail on a charge of possession of child pornography; bond was set at $50,000. (*Id.*, page 11).  On February 4, 2004, a commitment was issued to commit plaintiff to jail on a charge of indecency with a child sexual contact; bond was set at $50,000.  (*Id.*, page 12).

Texas law permits the arrest of an out-of-state fugitive in Texas by Texas authorities acting on an out-of-state warrant.  *See* TEX. CODE CRIM. PROC. ANN. art. 51.13 (Vernon 2006); *Heard v. State*, 701 S.W.2d 298, 302 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd).  Plaintiff presents nothing to show that the fugitive warrant was issued in error or that

Galveston County officials had reason to doubt the validity and veracity of such document in arresting plaintiff or detaining him pending extradition.  Likewise, plaintiff presents nothing to contravene summary judgment proof that he received his statutory warnings shortly after his arrest.  Because plaintiff fails to contravene Sheriff Leonard's summary judgment proof, which shows that plaintiff was lawfully arrested and given his statutory warnings, he fails to show that Leonard is not entitled to qualified immunity on this ground.  Accordingly, Leonard is entitled to summary judgment on this claim.

Leonard is also correct that plaintiff's speedy trial claim is barred by the *Heck* doctrine.  Under *Heck*, a federal district court must dismiss a complaint brought pursuant to 42 U.S.C. § 1983, when the civil rights action, if successful, would necessarily imply the invalidity of a plaintiff's conviction or sentence, unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254.  *Heck*, 512 U.S. at 486-87. A Sixth Amendment challenge to a speedy trial is a challenge to the inmate's continued confinement and is barred by *Heck* if not remedied by any of the procedures listed in *Heck*.  *See e.g., Josey v. Texas Dept. of Public Safety*, 101 Fed.Appx. 9, 10 (5th Cir. 2004).  In this case, plaintiff challenges his confinement by asserting a Sixth Amendment violation of his right to a speedy trial on charges by the State of Texas that he possessed child pornography and engaged in indecency with a child.  Plaintiff has not shown that he has met any of the *Heck* requirements with respect to his convictions on these charges.  Success on his Sixth Amendment claim in this cause of action would necessarily imply the invalidity of his current confinement.  Therefore,

plaintiff is barred by *Heck* from proceeding under 42 U.S.C. § 1983 with respect to his challenge to his confinement and to his right to a speedy trial at this time.

Accordingly, plaintiff is not entitled to relief from defendant Leonard on his claim of an illegal arrest; nor is he entitled to relief from defendants Leonard, Cox, and Sistrunk on his Sixth Amendment claim.   Therefore, the Court will grant Leonard's motion for summary judgment with respect to these claims.

### B. Property Loss

Plaintiff alleges that law enforcement officers under Sheriff Leonard's supervision impounded his vehicle, which led to the loss of his prescription eyeglasses and orthopedic shoes.   (Docket Entry No.16).   Plaintiff also claims that the property in his recreational vehicle, storage building, moving van, and cargo trailer was stolen while he was in the Galveston County Jail, resulting in a loss of over $100,000.   (*Id.*).   Plaintiff indicates that Galveston County detectives reported the theft to him shortly after his arrest and promised to investigate.   (Docket Entry No.41).   Plaintiff claims their investigation did not produce any results or information.   (*Id.*).   He complains that he was not allowed to secure his property.   (*Id.*).

Plaintiff's pleadings do not allege that Sheriff Leonard or any law enforcement officer violated plaintiff's constitutional rights with respect to his property.   To the extent that a law enforcement officer's failure to secure plaintiff's property following his arrest or failure to allow plaintiff to secure his property constitutes an intentional or negligent deprivation of property, plaintiff still fails to show his entitlement to relief.   An unauthorized, intentional deprivation of property by a government employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.  *Hudson v. Palmer*, 468 U.S. 517,

533 (1984); *accord Daniels*, 474 U.S. at 328 (negligence by state official is not a violation of rights under Fourteenth Amendment); *see Wagner v. Higgins*, 754 F.2d 186, 192 (6th Cir. 1985) (action under 42 U.S.C. § 1983 against police officers who allegedly stole personal property from an arrestee's automobile fails to state a constitutional claim under § 1983).  In an action for deprivation of property under color of law without due process the plaintiff must prove the absence of adequate state remedies as an element of the constitutional tort. *Hudson*, 468 U.S. at 535.  "In Texas, as in many states, the tort of conversion fulfills this requirement." *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994).  Because plaintiff has an adequate remedy at law in state court, his § 1983 claim with respect to the loss of his property is without a legal basis and subject to dismissal.

Moreover, liability based on supervisory capacity exists only if the supervisor is personally involved in constitutional deprivation or a sufficient causal connection exits between the supervisor's wrongful conduct and the constitutional violation. *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).  Plaintiff's pleadings do not reflect that Sheriff Leonard was personally involved in securing plaintiff's property.  Accordingly, Sheriff Leonard is entitled to summary judgment on plaintiff's property claim.

## C. Failure to Protect

Plaintiff also claims that he has been the victim of several inmate attacks at the Galveston County Jail, and has suffered many serious injuries as a result of such attacks including severe head trauma, a broken tooth, and a bloody face and nose.  (Docket Entry No.6). He claims the jailors responsible for his safety did little or nothing to prevent the attacks or to prevent future attacks.  (*Id*.).  Plaintiff claims that on or about the second week of January, 2004, he was attacked in the "G" pod of the Galveston County Jail.  (Docket Entry No.16).  In March,

11

2004, plaintiff claims that he was set to be moved to another pod for safety reasons when he kicked several times in the side and back by other inmates.  He suffered bruises to his ribs and left leg and a bump on his head.  (*Id.*).  Plaintiff attributes the attacks to overcrowding.  (Docket Entry No.41).

The State owes the same duty of care under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with . . .  protection from harm during their confinement."  *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).  Therefore, regardless of whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts of omissions of jail officials that expose an inmate to being harmed by another inmate.  *Hamilton v. Lyons*, 74 F.3d 99, 104 n. 3 (5th Cir.1996); *Hare*, 74 F.3d at 650.

Prison officials have a duty to protect inmates from harm or violence by other inmates.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Hare*, 74 F.3d at 650.  To establish a failure-to-protect claim, an inmate must show that he was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection."  *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).

A convicted prisoner or pretrial detainee may succeed on a claim for damages under 42 U.S.C. § 1983 for failure to protect from harm only if he demonstrates that there has been "deliberate indifference" by prison officials or other state actors.   Only deliberate indifference, "an unnecessary and wanton infliction of pain ... or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Constitution.  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *accord Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976); *Hare*, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates

face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Plaintiff alleges no facts to show that Sheriff Leonard or any other person employed at the Galveston County Jail knew that plaintiff faced a substantial risk of harm from another inmate and disregarded that risk by failing to take reasonable measures to abate it. Sheriff Leonard's summary judgment proof reflects that on January 14, 2004, plaintiff's housing was changed from G Pod to D Pod because of "inmate safety" and "inmate stealing and threats." (Docket Entries No.38-2, page 25; No.38-4, page 2).  On February 5, 2004, he was moved from D Pod to the K Pod for "fear of his life."  (Docket Entry No.38-2, Exhibit A, page 24, Inmate Re-House Form).  On the same day, he was moved to B Pod.  (*Id*., page 27).

Plaintiff's Grievance/Request dated January 22, 2005, reflects that plaintiff informed the Jail officials that he had an ongoing problem with an inmate, who had been coming to plaintiff's cell and threatening him.  (Docket Entry No.38-2, page 54).  In reply, plaintiff was informed that jail officials would look into the matter and that the only thing that could be done was to move him to another pod.  (*Id*. at 53).  On June 23, 2005, plaintiff requested an immediate transfer from B-Pod because several inmates had threatened his life after a supposed leak in classification about his case.  (*Id*., page 58).  On July 1, 2005, the Classification Officer responded that plaintiff's criminal cases were public information and accessible by computer via the internet.  (*Id*. page 57).  On July 7, 2005, plaintiff was moved to the J pod.  (*Id*. page 48).

Plaintiff presents nothing to contravene Sheriff Leonard's proof, which shows that jail officials did not disregard a serious risk that plaintiff faced serious harm from other inmates; the record shows that jail officials were responsive to plaintiff's complaints of harm.  Moreover, plaintiff fails to show that Leonard was personally involved in any alleged failure to protect or

13

that he instituted or implemented an unconstitutional policy with respect to the same. Accordingly, Leonard is entitled to qualified immunity and summary judgment on this ground.

D. Medical Care

Plaintiff contends that he was denied reasonable medical care while detained in the Galveston County Jail.  (Docket Entry No.6).  Plaintiff complains that he filed medical request forms and wrote letters to Sheriff Leonard regarding the denial of medical care but most requests and letters were unanswered.  (*Id.*).  He further complains that when treated, his needs were met with indifference and inadequate care.  (*Id.*).

Plaintiff does not allege that defendant Moffett treated him or refused to treat him. He sues her because she is the Health Service Administrative Nurse for Correctional Medical Services, the company that provides medical treatment for Galveston County Jail inmates and detainees.  (Docket Entry No.16, page 10).  Plaintiff complains that he had several distinct medical needs that went untreated or were treated improperly.  (*Id.*, page 11).  He claims that medical personnel either denied or delayed services and medications and that they did not follow the prescribed orders of specialists.  (*Id.*, page 10).  He holds Moffett responsible for his lack of care because she is the ultimate supervisor of medical personnel at the Galveston County Jail. (*Id.*).

Plaintiff also claims that he was not able to get to any of the referred specialist appointments.  (*Id.*, page 5).  He maintains that Dr. Jones, a physician at the Galveston County Jail, specifically told him that he should see a neurologist for his neck and head pain and an asthma/allergy specialist but he was not referred to such specialists.  (*Id.*).  Plaintiff also claims that he has not received treatment by a specialist for his arthritis or foot problems as of May 9, 2007.  (*Id.*).

14

Plaintiff further claims that Galveston County Jail physicians Keller and Youngblood told him that his tremors may have been caused by inmate attacks. (*Id.*). Plaintiff claims that he did not suffer tremors before his detention in the Galveston County Jail although he had suffered visual disturbances with migraine and sinus headaches. (*Id.*, page 6). Plaintiff indicates that he was not told what caused the tremors, and he was not examined for that condition. (*Id.*). Plaintiff indicates that he was examined by a specialist at the University of Texas Medical Branch in Galveston ("UTMB") on May 9, 2007, who recommended hospitalization, but the Correctional Medical Services personnel at the Galveston County Jail refused the recommendation; the nurse told the deputy to bring plaintiff back to the jail in the morning. (*Id.*, pages 5-6).

Plaintiff claims that he has continued to request medical treatment for his various conditions and to file complaints and grievances about the denial of care or inadequate care. (*Id.*, pages 8-9).

Defendant Moffett moves for summary judgment on grounds that plaintiff's claims are barred by the principle of *res judicata* because such claims were dismissed by Judge Cox on May 1, 2007, in a civil suit styled *Michael Alvin Krause v. Correctional Medical Service, Cheryl Moffett H.S.A., Dr. Cadore, Resident, M.D.,Galveston County*, No.06cv1150. (Docket Entry No.33). Moffett contends plaintiff's claims in the present suit are an attempt to recast his failed medical malpractice claims as a constitutional violation. (*Id.*).

Moffett also moves for summary judgment on grounds that she is entitled to qualified immunity and that plaintiff's claims are without legal merit. (*Id.*).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429

15

U.S. 97, 104 (1976).  The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm.  *Farmer*, 511 U.S. at 834.  The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk.  *Id.* at 834.  The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it.  *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002).  "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medial need in question and the alleged official dereliction."  *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants."  *Id.*  Mere negligence does not constitute a section 1983 cause of action.  *Estelle*, 429 U.S. at 106; *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a . . . failure to act reasonably").

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  *Estelle*, 429 U.S. at 104-05.  Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

The record in this case does not show that defendants Moffett or Leonard or any medical provider at the Galveston County Jail or UTMB was deliberately indifferent to plaintiff's serious medical needs.  The record shows that plaintiff requested care for various medical conditions, many of which were pre-existing and chronic.  He received medical attention for each condition, although he did not received the medical care that he thought appropriate in

each case or the immediate response that he desired.  With respect to any delay in treatment, the record does not show that plaintiff suffered substantial harm from such delay.

Moreover, the record does not reflect that Leonard or Moffett were personally involved in plaintiff's direct medical care.  *See Thompkins*, 828 F.2d at 304.  Moffett attested by affidavit in the state court proceeding that in her capacity as Health Service Administrator, she schedules appointments, handles grievances, and assists patients as needed.   (Docket Entry No.37, Exhibit A, page 71).  The record does not reflect that Moffett provided any medical service to plaintiff, except to schedule appointments and notify administrators at the Galveston County Jail regarding plaintiff's medical treatment.[4]   Nor does the record reflect that she had supervisory capacity over medical personnel with respect to treatment or referral to specialists. The record does not show that defendants Moffett or Leonard instituted a policy that would deprive plaintiff of the necessary medical care or services.

To the extent that defendants Moffett and Leonard did not respond to plaintiff's grievances and letters as he thought appropriate,[5] plaintiff fails to show that he has been deprived of any constitutional right.  An inmate does not have a constitutionally protected liberty interest

---

[4] Moffett informed Jail administrators of the following in pertinent part:

> Inmate Michael Krause came into our facility on 12/9/04.  He was being treated for an ear infection in the free world.  He came in without medications and was referred to MDSC.  MD evaluated inmate Krause on 12/12/03.  Medical records from his free world doctor [were] ordered and proper medications started.  Inmate Krause has been seen eleven times in Nurse sick call per his request.  His most current request was on 5/10/04, in which he was seen by staff on 5/12/04. This is within our 48-hour request standard for NCCHC.  Inmate Krause has been seen by the MD twice and he has refused MD sick call twice.  We are currently treating Inmate Krause for Benign Positional Vertigo.  He is schedule[d] to see the MD this month for Chronic Care.

(Docket Entry No.37, Exhibit A, page 69).

[5] *See* attachments to Docket Entries No. 17, No.39, No.41).

in having grievances or complaints resolved to his satisfaction.  *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

Furthermore, the record does not support plaintiff's claims that he was denied care or provided inadequate care, or that Galveston County Jail medical providers did not refer him to specialists, allow him to see specialists, or follow the orders of specialists.  With respect to plaintiff's specific claims, the record reflects the following:

Plaintiff contends he experienced hearing loss, ear infections, a broken front tooth, vertigo, spinning and dizziness, tremors, headaches, and other complications as the result of injuries he allegedly sustained from two inmate attacks and the lack of appropriate medical care at the Galveston County Jail.  (Docket Entry No.16, page 3).  Plaintiff's medical records show that he entered the Galveston County Jail with numerous ailments.  In his initial screening on December 9, 2003, he reported having rheumatoid arthritis in his feet and legs for many years, which was treated by over-the-counter medication.[6]  (Docket Entry No.37, Exhibit A, page 634).  He also reported having an irregular heartbeat, ear infections, and that he wore glasses for reading.  (*Id.*).  Plaintiff was seen by a physician on December 12, 2004, who noted his ear drainage and heart problems.  (*Id.*, page 392).

Plaintiff claims that in mid-January, 2004, he was attacked by another inmate and taken to the infirmary.  (Docket Entry No.16, page 3).  He was given a clean shirt and an ice-pack by an unnamed nurse.  He returned to the infirmary several hours later because his nose continued to bleed.  (*Id.*).  He was given another ice-pack.  The nurse on duty told him that he did not have a concussion.  (*Id.*).  Plaintiff, however, claims that he received a broken nose, a bloody face, a broken tooth, and a knot on his head from the inmate attack.  (*Id.*, page 11).

---

[6] Plaintiff states that he has had rheumatoid arthritis for many years and that he wore orthopedic shoes and a leg support prior to incarceration.  (Docket Entry No.16, page 11).

Plaintiff's medical records show that he was treated for a bloody, swollen nose on January 16, 2004, after he told the medical provider that he got punched in the nose. (Docket Entry No.37, Exhibit A, page 501). The medical provider noted the presence of a small amount of bright red blood from his swollen nose; she also noted that plaintiff complained that his nose was sore. (*Id.*). The provider further noted that plaintiff's left eye tooth was chipped but not loose. (*Id.*). Pressure was applied to the nose; the bleeding stopped and plaintiff was given an icepack and sent back to his cell. (*Id.*). The records do not show that plaintiff returned to the clinic hours later or that he suffered any other harm as a result of the punch to his nose. In fact, plaintiff's medical records reflect that he made numerous requests for medical treatment before and after the alleged attack and that the Jail's medical staff was responsive to his requests.[7]

Plaintiff maintains that in March, 2004, he was kicked in the side, back, and head by other inmates and suffered bruises to his ribs and left leg and a bump on his head. (Docket Entry No.16, page 4). He claims as a result of this attack, he was moved from D Pod to B Pod. (*Id.*). Plaintiff's records do not show that plaintiff was attacked by inmates in March, 2004, that the suffered an injury, that he requested medical attention for his alleged injuries, nor that he was treated for such injuries. Moreover, plaintiff's medical records do not show that he was moved from D Pod to B Pod in March, 2004. Plaintiff's medical records show that on January 31, 2004, he was housed on the D Pod. (Docket Entry No.37, Exhibit A, page 494). On February 7, 2004, plaintiff indicated on a request sheet that he was housed on the B Pod.[8] (*Id.*, page 493).

Although plaintiff claims that doctors have told him that his medical conditions are the result of the injuries he suffered from these assaults, plaintiff's medical records do not

---

[7] (Docket Entry No. 37, Exhibit A, pages 491-500, 502, 504-07, 626).

[8] Plaintiff was moved from D Pod to B Pod on February 5, 2004, because he feared for his life. (Docket Entry No.38-2, Exhibit A, pages 24, 27).

show that medical specialists have drawn such conclusions.  Plaintiff told specialists at UTMB in mid-August, 2004, that he suffered head trauma thirteen to fourteen months ago at which time he lost consciousness and experienced bleeding from both ears.  (Docket Entry No.37, Exhibit A, page 324).  Plaintiff attributed the vertigo attacks and chronic ear infections to the head trauma. (*Id.*, pages 323, 324, 326, 332).  The record, however, shows that on July 16, 2004, the Jail physician noted that plaintiff suffered from arthritis, chronic ear infections and vertigo "due to allergies." (*Id.*, page 387).

The record is silent with respect to plaintiff's claim that Doctors Keller and Youngblood told him that his tremors may have been caused by inmate attacks and that Dr. Jones told him he should see a neurologist for his neck and head pain and an allergy specialist. Even if plaintiff's claims were true, he fails to show that defendants Moffett and Leonard were deliberately indifferent for failure to act on such information.   Neither defendant held supervisory authority over jail physicians, who made referrals to UTMB specialists.

Plaintiff also claims that he suffered bleeding ears in March, 2004.  (Docket Entry No.16, page 6).  He indicates that the physician ordered ear drops and medication for vertigo. (*Id.*).  He maintains that he requested additional medical treatment in April and May, 2004, but his requests were ignored.  (*Id.*).  Plaintiff claims that on May 13, 2004, he submitted a grievance regarding the lack of care and deliberate indifference.  (*Id.*).  He also paid an attorney to send a letter to Sheriff Leonard regarding his medical care.[9]  (*Id.*).

---

[9] In the letter to Sheriff Leonard, Attorney David P. O'Neil indicated that plaintiff's medication for severe vertigo had been stopped on or about April 30th for some unexplained reason and since then plaintiff had had an ear infection.  (Docket Entry No.17, page 13).  O'Neil further stated that plaintiff had extreme pain and bleeding in both ears.  (*Id.*).  He indicated that plaintiff had made seven medical requests and talked to three medical providers but had not been treated.  (*Id.*).  He also indicated that on May 13, 2004, plaintiff submitted another request and a grievance form but he had not been given a reason as to why he had not been treated.  (*Id.*).

20

Plaintiff's medical records do not show that he suffered bleeding ears in March 2004, or that he was denied medical treatment for bleeding ears at any time.  Plaintiff's records show that on March 24, 2004, plaintiff complained of an ear infection that caused him to suffer a spinning sensation and lack of balance; he indicated that he had just completed an antibiotic for a tooth problem.[10]  (Docket Entry No.37, Exhibit A, page 490).  On March 26, 2004, plaintiff was seen by the Jail physician for a spinning sensation that plaintiff experienced when he moved his head.  (*Id.*, page 390).  The physician diagnosed the condition as benign positional vertigo.  (*Id.*).  On April 6, 2004, the physician prescribed Meclizine for thirty days to treat plaintiff's vertigo problems.  (*Id.*, page 217)  Over a year later, on April 7, 2005, plaintiff requested to see a doctor regarding a bloody, infected ear, bad headaches, and swollen glands.  (*Id.*, page 452).  He indicated that he had stopped taking some of his medication.  (*Id.*).  On April 9, 2005, plaintiff was seen in the clinic for ear pain and draining.  (*Id.*, page 451).  On April 11, 2005, he was seen by a physician, who prescribed medication for his ears.  (*Id.*, page 213, 381).

The record, however, does reflect that plaintiff's treatment for his vertigo condition was delayed on one occasion in 2004.  On May 9, 2004, plaintiff requested that a physician restart aspirin treatment for his arthritis and Meclizine for vertigo, which had apparently expired on May 6, 2004.  (*Id.*, page 486).  Plaintiff was seen by a medical provider who referred his chart to the physician, noting that plaintiff stated that other medication did not work.  (*Id.*, page 485).  On May 19, 2004, the physician prescribed Meclizine, as requested.  (*Id.*, page 217).  On May 20, 2004, plaintiff was examined by a Jail physician, who prescribed other

---

[10] Medical records show that on March 10, 2004, plaintiff was seen by a dentist for two broken teeth; he was prescribed an antibiotic and a pain killer.  (Docket Entry No.37, Exhibit A, page 398).  He was seen for follow-up on March 22, 2004.  (*Id.*, page 396).  On March 31, 2004, plaintiff had a tooth extracted.  (*Id.*, pages 393-95).

medication for plaintiff's various conditions.  (*Id*., pages 217, 389).  The record does not reflect that plaintiff suffered substantial harm from such delay.

Plaintiff also claims that he did not receive treatment for an allergic reaction to seven spider bites.  (Docket Entry No.16, page 11).  Plaintiff claims that on June 15, 2004, he saw a doctor for ringing and bleeding ears and for a bite on his knee.  (*Id*., page 6).  Three days later, plaintiff was referred to wound care for the bite.  (*Id*.).  He maintains that Dr. Keller gave him a prescription for codeine for pain but did not prescribe antibiotics or other treatment; consequently, by June 20, 2004, his leg was swollen.  (*Id.*, pages 6-7).  He claims the triage nurse gave him Neosporin cream and said that was all she could do.  (*Id.*).  He contends that by June 25, 2004, he had more bites on his arm.  (*Id.*).  He states that the picket deputy put in a request for treatment and on June 27, 2004, he saw the triage nurse, who told him to purchase medication from the commissary.  (*Id*.).  The nurse also gave him an antihistamine.  Plaintiff claims that he was told that the ringing in his ears and the swelling were an allergic reaction to the bites.  (*Id*.).  He claims that on July 3, 2004, he submitted another request for treatment.  (*Id*.).  Plaintiff maintains that he was promised by several deputies that he would be going to the infirmary that day but he was never called.  (*Id.*).  On July 4, 2004, he was called to the infirmary.  (*Id*., page 7-8).  He indicates that he was running a high fever; consequently, antibiotics were prescribed.  (*Id*., page 8).  He notes that by July 11, 2004, his arm was better; however, by July 14, 2004, his vertigo was worse.  (*Id*.).

Plaintiff's medical records do not show that plaintiff suffered from a spider bite or that he was denied treatment for the same.  Plaintiff's records reflect that on July 18, 2004, he was seen by a nurse for an abscess on his right knee that had lasted three days.  (Docket Entry No.37, Exhibit A, page 482).  On July 2, 2004, plaintiff was seen in the infirmary for seasonal

allergies in response to a request issued June 28, 2004.  (*Id.*, page 480).  On July 4, 2004, plaintiff was seen for an abscess to his right elbow.  (*Id.*, page 479).  The nurse noted that plaintiff had not been taking his medication as ordered.  (*Id.*).  She also noted that his temperature was 99.1 degrees.  (*Id.*).  The record does not reflect further requests for treatment of the abscesses, although plaintiff was treated for skin rashes.[11]

The record reflects that medical personnel were responsive to plaintiff's medical requests in 2004 and 2005.  (Docket Entry No.37, Exhibit A, pages 213-15, 383-86, 416, 453-59).  Contrary to plaintiff's claims, Jail doctors referred plaintiff to specialists for his ear problems and followed protocol set by such specialists.  (*Id.*, pages 71, 138-41, 168-71, 201-08, 210, 212-13, 221, 228, 241-42, 257-58, 264-65, 271-72, 274, 276-77, 282-84, 287-88, 292-98, 301, 304-05, 307, 310, 312-13,319, 322, 324, 326-28, 331-22, 335-38, 340-41, 343, 346-47, 349-56, 358, 371-73, 376, 378-80, 433-34, 437-39, 441-45, 449-50).  Moffett attests and the record shows that between December 2003, and December 2006, plaintiff was referred to, and seen numerous times by, otolaryngologists, a head and neck surgeon, and a podiatrist[12] at UTMB and

---

[11] On December 17, 2004, plaintiff requested medication for a rash on his arms and ears; he complained that his ears were bleeding and that his foot had an infection and a rash.  (Docket Entry No.37, Exhibit A, page 468).  He was seen by a nurse in the clinic, who noted two red spots—one on his hand and one on his arm.  (*Id.*, page 467).  On January 9, 2005, plaintiff was seen for dermatitis or a mild rash after he submitted two sick call requests, the last one on December 21, 2004.  (*Id.*, page 464).  On January 9, 2005, plaintiff was seen in the clinic for a follow-up to the skin rash, for an ear ache, and for his allergies.  (*Id.*, pages 461-64).  Notes show that the skin rash was resolved. (*Id.*, page 464).

On May 24, 2005, plaintiff requested medication for a rash on his arms and a boil on his hand.  (*Id.*, page 447).  He was seen in the clinic the next day and medication prescribed.  (*Id.*, pages 212, 446).  He was ordered to report to wound care daily.  (*Id.*, page 446).

On November 18, 2005, plaintiff requested treatment for a rash on both legs and feet.  (*Id.*, pages 431).  He was seen in the Jail clinic on November 20, 2005.  (*Id.*, pages 429-30, 432).  He was given hydrocortisone cream.  (*Id.*, page 430).  Plaintiff was seen by a Jail physician regarding the rash on November 30, 2005, and additional medication was prescribed.  (*Id.*, page 377).

[12] (Docket Entry No.37, Exhibit A, pages 202-04, 215, 249, 251, 268, 374-75, 384-86, 469-72).

23

the Galveston County Jail.  (*Id.*, page 71).  Likewise, plaintiff was treated for neck pain[13] and

swollen feet.[14]  Plaintiff's dissatisfaction with the medical treatment that he received does not

mean that he suffered deliberate indifference.  *See e.g. Norton v. Dimazana*, 122 F.3d 286, 291-

92 (5th cir. 1997); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (holding inmate's

"disagreement with his medical treatment" not sufficient to show Eighth Amendment violation);

*Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect or

medical malpractice is insufficient" to show Eighth Amendment violation).

Because plaintiff has not shown a genuine issue of material fact on his Eighth

Amendment claim, defendants are entitled to summary judgment.

### D. Equitable Relief

Plaintiff is no longer confined in the Galveston County Jail.  Therefore, to the

extent that he seeks equitable relief on claims related to his confinement in the Jail, his transfer to

the TDCJ renders his claims for such relief moot.  See *Herman v. Holiday*, 238 F.3d 660, 665

(5th Cir. 2001) (holding even if inmate was able to establish constitutional violation, his transfer

to another prison rendered moot his claim for declaratory and injunctive relief).

### E. Judge Cox and District Attorney Sistrunk

Plaintiff states no facts that would give rise to a claim that defendants Judge

Lonnie Cox and Galveston County District Attorney Kurt Sistrunk violated his rights to due

process, equal protection, access to the courts, or to his liberty.  "A plaintiff may not plead

merely conclusory allegations to successfully state a section 1983 claim, but must instead set

forth specific facts which, if proven, would warrant the relief sought."  *Arnaud v. Odom*, 870

[13] (Docket Entry No.37, Exhibit A, pages 73, 96, 214, 380, 382, 450, 455).

[14] On (Docket Entry No.37, Exhibit A, pages 56, 64-65, 91, 96, 98-99, 378, 435, 442-444).

24

F.2d 304, 307 (5th Cir. 1989).  To the extent that he seeks relief from Cox and Sistrunk for their actions during the prosecution of his trial, he states no facts to overcome their immunity from damages.  *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (stating that prosecutors are absolutely immune from liability under section 1983 damages "for alleged civil rights violations, insofar as the prosecutor's conduct is performed to initiate prosecution or to carry the case through the judicial process"); *Stump v. Sparkman,* 435 U.S. 349, 356 (1978) (noting that judges, both federal and state, enjoy absolute judicial immunity from damages for judicial acts performed in judicial proceedings before them).   Accordingly, plaintiff's claims against defendants Cox and Sistrunk are subject to dismissal as legally frivolous.  See 28 U.S.C. § 1915A(b).

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1.  Defendant Cheryl Moffett's motion for summary judgment (Docket Entry No.33) and defendant Gean Leonard's motion for summary judgment (Docket Entry No.38) are GRANTED.   All claims against defendants Moffett and Leonard are DISMISSED WITH PREJUDICE.

2.  All claims against defendants Lonnie Cox and Kurt Sistrunk are DISMISSED as legally frivolous pursuant to 28 U.S.C. § 1915A.

3.  Any additional pending motions are DENIED, AS MOOT.

4.  This complaint is DISMISSED WITH PREJUDICE.

It is so ORDERED.

SIGNED at Houston, Texas, this 18th day of February, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

2